```
                UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF MISSISSIPPI
                       JACKSON DIVISION
```

PAUL MCDONALD, ET AL.                                    PLAINTIFFS

VS.                              CIVIL ACTION NO. 3:09CV136TSL-JCS

RAYCOM TV BROADCASTING, INC.
DBA WLBT ET AL.                                          DEFENDANTS


<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of defendant Media General Operations, Inc. d/b/a WJTV (WJTV) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs have responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is well taken and should be granted.

During its noon broadcast on February 26, 2008, WJTV displayed plaintiff Paul McDonald's name and photograph in connection with a report that he was wanted by the Jackson Police Department in relation to the rape of a twelve-year-old girl. The broadcast was based on a media/press release issued earlier that day by the Jackson Police Department and forwarded via email to WJTV by Jeffery Scott, Assistant Public Information with the Jackson Police Department, which recited:

> The Jackson Police Department is asking for the Public's help in locating two wanted subjects.

> Twenty year old Paul McDonald has been charged with two(2) counts of Statutory Rape.
>
> McDonald allegedly had sexual encounters with a twelve year old female.

Although the email recited that photographs of the two suspects could be obtained from the "H.C.S.O. [Hinds County Sheriff's Office] website," there was no photograph of Paul McDonald on the website. Accordingly, a WJTV editor contacted Chief Deputy Sheriff Steve Pickett with the Hinds County Sheriff's Office and requested a photograph of the Paul McDonald who was wanted by the Jackson Police Department. A photograph was provided, as requested. Unfortunately, the photograph which the Sheriff's Office provided was not of the Paul McDonald who was being sought by the Jackson Police Department but was instead a mug shot of the plaintiff herein. WJTV did not learn of the error until later in the day, when it was informed by Deputy Sheriff Pickett that his office had made a clerical error in providing the photograph of the wrong Paul McDonald. The Sheriff's Department had provided a photograph of Paul Jermiane McDonald, plaintiff herein, when the police were actually looking for Paul Pickerson McDonald. During the 5:00 p.m. broadcast, and succeeding broadcasts that day, the WJTV anchor announced that a photograph of the wrong Paul McDonald had been shown during the noon broadcast and that the actual suspect, Paul Pickerson McDonald, had been arrested.

Plaintiff Paul McDonald and his wife, for themselves and on behalf of their children, have filed this lawsuit against WJTV (and against another news station which also is alleged to have aired his photograph) asserting putative causes of action for negligent supervision, negligence per se, intentional or negligent infliction of emotional distress, malicious prosecution, violations of due process and equal protection, civil conspiracy and loss of consortium, all of which claims are ultimately based on his allegation that WJTV's noon broadcast defamed him.

WJTV has filed its present motion based on the "fair report" privilege, or "official proceedings" privilege, which holds that the publication of defamatory matter concerning another in "a report of an official action or proceeding ... is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported." See Brocato v. Mississippi Publishers Corp., 503 So. 2d 241, 244 (Miss. 1987) (quoting Restatement (Second) of Torts § 611 (1977)).

As this court explained in Pittman v. Gannett River States Publishing Corp., 836 F. Supp. 377, 382 (S.D. Miss. 1993), as a general rule, one who repeats a defamatory statement attributed to another cannot avoid liability merely by showing that the statement was made by the other person because, under the republication rule of defamation, one who repeats slander or libel from another endorses it. Id. at 382. However, under the

"official proceedings" or "fair report" exception to the republication rule, "'publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported.'" Id. (quoting Brocato, 503 So. 2d at 244 (in turn quoting Restatement (Second) Torts, § 611)). This exception is premised on the recognition that strict adherence to the republication rule might dissuade the press from reporting important information due to the threat of legal action, and exists to ensure that information is made available to the public concerning what occurs in official proceedings. Id.

The privilege applies to all reports of "official action," so long as the privilege is not abused by an unfair and inaccurate description of the official action. That is, so long as the article is a fair and accurate republication of an official report, the article is protected, even if the official report is itself false or inaccurate. In its motion, WJTV maintains the challenged broadcast meets both of the requirements for application of the privilege, and the court, having considered the evidence, readily concludes that the privilege applies. See Pittman, 836 F. Supp. at 382 ("Whether the privilege applies in a

4

particular case is generally a matter for the court to decide.")
(citing Restatement (Second) Torts, § 619).

Numerous cases recognize the principle that information released by the police, including reports and records, is generally considered to be a report of an official action subject to the fair report privilege. See, e.g., Whiteside v. Russellville Newspapers, Inc., -- S.W.3d ---, 2009 Ark. 135, 2008 WL 857516, at *3 (Ark. 2009) (collecting cases). This has been routinely held to include reports based on police press releases. See, e.g., Alsop v. The Cincinnati Post, 24 F. Appx. 296, 297-98, 2001 WL 1450784, at 1 (6th Cir. 2001) (applying privilege to newspaper's statement that plaintiff sold crack cocaine to informants at his store, where challenged statement was based on information obtained from U.S. Attorney's press release); Freedom Communications, Inc. v. Sotelo, No. 11-05-00336-CV, 2006 WL 1644602 at *3-4 (Tex. Ct. App. June 15, 2006) (applying privilege to news accounts which incorrectly identified plaintiff as sex offender based on police department news release); Steer v. Lexleon, Inc., 58 Md. App. 199, 472 A.2d 1021, 1024 (1984) (privilege applied to news account wrongly identifying crime victim as perpetrator where erroneous information was obtained from an authorized release of arrest information through an official governmental channel); see also Hegwood v. Community First Holdings, Inc., 546 F. Supp. 2d 363, 366-67 (S.D. Miss.

2008) (applying privilege to account of sheriff's press release that a home repairman had been accused of fraud, stating, "Because the Defendant's article is a fair and accurate republication of an official report, Community First's article is protected by the official report privilege without explicitly considering official action question.").

Moreover, a number of courts have applied the privilege to published accounts of police reports which falsely accused the plaintiff of a sex crime. See, e.g., Sotelo, supra; Martinez v. WTVG, Inc., No. L-07-1269, 2008 WL 1700443 (Ohio. Ct. App. Apr. 11, 2008); Whiteside, supra. And in at least one such case, Martinez, 2008 WL 1700443, the court applied the privilege to the broadcast of a mug shot of the wrong person in connection with a report that such person had been indicted for the rape of a 12-year-old girl.

In Martinez, the defendant reported in a nightly news report that Ricardo Martinez had been indicted for the rape of a 12-year-old girl. Along with the report, the defendant displayed mug shots of Ricardo Martinez. However, the mug shot that was displayed was not that of the indicted Ricardo Martinez, but rather was the mug shot of the plaintiff, who had never been indicted for a sexually-related offense. The defendant had obtained the plaintiff's mug shot from the county sheriff's department, whose officer provided the wrong mug shot. The court

6

held the privilege applied to the broadcast of the photograph, stating,

> If official records inaccurately maintained by government officials are protected by the privilege, then official records inaccurately accessed by government officials must also be protected by the privilege. The news media should be able to rely on government records to accurately reflect the facts, and should be protected from defamation if those records are wrong.... Similarly, the news media should be able to rely upon those in charge of accessing official records to provide them with the correct requested records.
>
> The purpose of the privilege ... is to protect news media and others from defamation claims when making substantially accurate reports of information contained in official records. In cases in which the only reasonable way to access an official record is to request the record from a government official, the purpose of the privilege would be defeated if the actions of the government official in merely accessing the record are considered outside of the privilege.

Martinez, 2008 WL 1700443, at 5-6 (citations omitted).

In this case, as in each of the cases cited, WJTV did no more than accurately broadcast information that had been furnished directly by law enforcement officials. That the information provided to it by these law enforcement agencies was inaccurate is immaterial in assessing WJTV's potential liability. As a matter of law, it was entitled to rely on these "official reports," and its broadcast was patently a fair and accurate representation of the material provided by law enforcement. Accordingly, the court

7

concludes that the challenged broadcast was privileged and forecloses plaintiffs' claims herein,[1] including not only their claim for defamation, but all the claims they have asserted, since all their claims are based on the very same factual predicate as their defamation claim. See Yohe v. Nugent, 321 F.3d 35, 44 (1st Cir. 2002) (finding that emotional distress claim premised on precisely the same facts as the plaintiff's defamation claims, namely, publication of the police chief's official statements, was barred by fair report privilege, stating, and stating that "a plaintiff cannot invade the protections of the fair report privilege merely by re-labeling his claim.") (citations omitted).

---

[1] The court notes that plaintiff has moved pursuant to Rule 56(f) of the Federal Rules of Civil Procedure to stay consideration of WJTV's summary judgment motion until after the end of discovery on March 22, 2010 so that he can depose "Steven Pickett, Ross Adams, Drew Foster, District Attorney Robert Smith, investigator Ross Adams and to conduct further discovery as necessary including deposing individuals with the Hinds County Sheriff's Department and the Jackson Police Department." Plaintiff does not state directly the purpose of such discovery, but he alludes to witnesses "who may testify to the common procedures for obtaining photos of suspects and the actions taken by the Defendant." Plaintiff's request plainly does not satisfy the requirements of Rule 56(f), and will be denied. See Access Telecom, Inc. v. MCI Telecomms. Corp., 197 F.3d 694, 719 (5th Cir. 1999) ("To obtain a continuance of a motion for summary judgment, a party must 'specifically explain both why it is currently unable to present evidence creating a genuine issue of fact and how a continuance would enable the party to present such evidence.'")(quoting Liquid Drill, Inc. v. Turnkey Exploration, Inc., 48 F.3d 927, 930 (5th Cir. 1995)).

8

Based on the foregoing, it is ordered that WJTV's motion for summary judgment is granted.

SO ORDERED this 24th day of August, 2009.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE